No. 21-16969

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

VIP PRODUCTS, LLC,

*Appellee,*

v.

JACK DANIEL'S PROPERTIES, INC.

*Appellant*

On Appeal from the United States District Court
for the District of Arizona, No. 2:14-cv-02057-SMM
Hon. Stephen M. McNamee

## APPELLANT'S PETITION FOR REHEARING EN BANC

THEODORE H. DAVIS JR.
KILPATRICK TOWNSEND &
STOCKTON LLP
  1100 Peachtree Street NE
  Suite 2800
  Atlanta, GA 30309

DENNIS L. WILSON
KILPATRICK TOWNSEND &
STOCKTON LLP
  1801 Century Park East
  Suite 2300
  Los Angeles, CA 90067

LISA S. BLATT
  *Counsel of Record*
AMY MASON SAHARIA
MATTHEW B. NICHOLSON
NATALIE A. KOMROVSKY*
WILLIAMS & CONNOLLY LLP
  725 Twelfth Street, N.W.
  Washington, DC 20005
  (202) 434-5000
  (202) 434-5029 (fax)
  lblatt@wc.com

*(Additional counsel on inside cover)*

*Admitted in Tennessee. Practice supervised by D.C. Bar members pursuant to the D.C. Court of Appeals Rule 49(c)(8).

Isaac S. Crum
Messner Reeves LLP
*7250 N. 16th Street*
*Suite 410*
*Phoenix, AZ 85020*

## CORPORATE DISCLOSURE STATEMENT

Appellant Jack Daniel's Properties, Inc. is a wholly owned subsidiary of

Brown-Forman Corporation, a publicly traded company.

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................... 1

STATEMENT ................................................................................................ 3

ARGUMENT ............................................................................................... 12

I.      The Panel's Decision Conflicts with Decisions of Other Circuits. ......... 12

        A.      The Panel's Decision Regarding Infringement Creates a
                Circuit Conflict. .................................................................... 12

        B.      The Panel's Decision Regarding Dilution Creates a Circuit
                Conflict. ................................................................................ 16

II.     The Questions Presented Are Exceptionally Important and
        Squarely Presented. .................................................................... 18

CONCLUSION ............................................................................................ 21

# TABLE OF AUTHORITIES

Page

Cases:

*Anheuser-Busch, Inc. v. VIP Prods., LLC*,
666 F. Supp. 2d 974 (E.D. Mo. 2008) ..........................................4

*Bos. Red Sox Baseball Club Ltd. P'ship v. Sherman*,
88 U.S.P.Q.2d 1581 (T.T.A.B. 2008).........................................15

*Cards Against Humanity, LLC v. Vampire Squid Cards, LLC*,
Opp'n No. 91225576, 2019 WL 1491525 (T.T.A.B. Feb. 28, 2019)...........15

*Cottier v. City of Martin*, 604 F.3d 553 (8th Cir. 2010) ..................................21

*Elvis Presley Enters. v. Capece*, 141 F.3d 188 (5th Cir. 1998) .....................14

*Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806 (2d Cir. 1999) .............15

*Jeffries v. Wood*, 114 F.3d 1484 (9th Cir. 1997)............................................21

*Jordache Enters. v. Hogg Wyld, Ltd.*, 828 F.2d 1482 (10th Cir. 1987)........14

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*,
507 F.3d 252 (4th Cir. 2007)..................................................14, 16

*Matal v. Tam*, 137 S. Ct. 1744 (2017) ...........................................................19

*Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894 (9th Cir. 2002).....................20

*Mut. of Omaha Ins. Co. v. Novak*, 836 F.2d 397 (8th Cir. 1987) ............13, 14

*N.Y. Yankees P'ship v. IET Prods. & Servs., Inc.*,
114 U.S.P.Q.2d 1497 (T.T.A.B. 2015)......................................16

*Nike, Inc. v. "Just Did It" Enters.*, 6 F.3d 1225 (7th Cir. 1993) ............13, 18

*Radiance Found., Inc. v. NAACP*, 786 F.3d 316 (4th Cir. 2015)...........14, 17

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
566 U.S. 639 (2012) ..............................................................19, 20

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989)...............................*passim*

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
588 F.3d 97 (2d Cir. 2009) .....................................................16, 20

*U.S. Pat. & Trademark Off. v. Booking.com B.V.*,
140 S. Ct. 2298 (2020) ................................................................18

Constitution and Statutes:

U.S. Const. amend. I ...........................................................................*passim*

15 U.S.C. § 1125 ................................................................................*passim*

Lanham Act.........................................................................................*passim*

Trademark Dilution Revision Act of 2006 ...........................................*passim*

# INTRODUCTION

This case presents questions of exceptional importance: under what circumstances does humorous use of another's trademark to identify the origin of one's own commercial product excuse trademark infringement or dilution. In conflict with other circuits, a panel of this Court held that virtually any use of humor insulates a commercial rip-off of a trademark from infringement or dilution liability. That decision renders one's trademarks a free-for-all for profiteers looking to make money off a joke.

Appellant Jack Daniel's Properties, Inc. ("Jack Daniel's") identifies its whiskey with near-universally recognized trademarks and trade dress. It also carefully licenses use of its trademarks and trade dress on non-whiskey products, including pet products. Appellee VIP Products, LLC ("VIP") pirated Jack Daniel's trademarks and trade dress to make a dog toy, "Bad Spaniels," that imitates a Jack Daniel's bottle while adding dog-poop humor.

On the issue of infringement, every other circuit to confront a similar case has applied the Lanham Act's likelihood-of-confusion test, which asks whether one's use of another's trademark likely confuses consumers about the source of the product or a potential association between the parties. Under that test, the humorous nature of the product is just one factor in the analysis.

1

Here, however, the panel held that, because VIP used Jack Daniel's marks in a humorous way, its dog toy merited heightened First Amendment protection. It then borrowed the two-part test from *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), under which the title of an artistic work is protected unless it has "no artistic relevance" or is "explicitly mislead[ing]." *Id.* at 999.

By holding that humor entitles an ordinary commercial product to the special protections normally reserved for artistic or expressive works, the panel gutted the Lanham Act. As the district court recognized on remand when granting VIP summary judgment with evident regret, it is "nearly impossible for any trademark holder to prevail under the *Rogers* test." Ex. 5, at 11 (ECF 305). The panel's decision leaves trademark owners with no way to protect their marks when infringers employ even a modicum of humor.

The panel also egregiously erred on the issue of dilution. As two circuits have recognized, the Trademark Dilution Revision Act of 2006 ("TDRA") excludes from dilution liability parodies of famous marks, but only if the defendant uses the famous mark "other than as a designation of source" for its own product. 15 U.S.C. § 1125(c)(3)(A). Here, the district court rejected VIP's parody defense because VIP used Jack Daniel's marks to designate the source of its dog toy; in other words, VIP used Jack Daniel's marks as its own marks.

2

The panel, however, sidestepped that ruling and held that VIP's purported parody qualified for the separate exclusion for "noncommercial" uses merely because it was humorous. *Id.* § 1125(c)(3)(C). That holding nullifies the limits on the parody exclusion.

If allowed to stand, the panel's outlier rulings on infringement and dilution will result in consumer confusion and undermine trademark owners' investments in goodwill. This Court should grant rehearing en banc to correct the panel's errors and restore uniformity among the circuits.

## STATEMENT

1. Jack Daniel's owns and licenses the trademarks and trade dress associated with JACK DANIEL'S® Tennessee whiskey. Ex. 1, at 2 (ECF 245). This whiskey has been sold for over a century, except during Prohibition. *Id.* at 2. Since 1875, it has borne the registered trademarks JACK DANIEL'S and OLD NO. 7. *Id.* Jack Daniel's also has trademark registration for the three-dimensional configuration of its square-shaped bottle. *Id.*

Hundreds of millions of dollars have been spent promoting Jack Daniel's Tennessee whiskey, and Jack Daniel's trademarks and trade dress are almost universally recognized. *Id.* at 6-7. Jack Daniel's also maintains an active brand

3

licensing program. *Id.* at 2. It licenses its trademarks for use on certain pet products, including dog leashes, dog collars, and dog houses. *Id.* at 3.

2. VIP designs, manufactures, and sells chew toys for dogs. *Id.* at 2. It has various product lines, including "Silly Squeakers." *Id.* This line consists of dog toys designed to profit off of consumers' familiarity with well-known brands of liquor, beer, wine, and soda, while adding dog-related and often excrement-related humor. *Id.* at 3. Examples include dog toys labeled "Smella R-Crotches" (exploiting Stella Artois), "Heini Sniff'n" (exploiting Heineken), and "Pissness" (exploiting Guinness). *Id.*

VIP formerly sold a toy labeled "Buttwiper" (exploiting Budweiser). In 2008, however, a district court preliminarily enjoined its sale. *Anheuser-Busch, Inc. v. VIP Prods., LLC*, 666 F. Supp. 2d 974, 988 (E.D. Mo. 2008).

Undeterred, VIP in 2014 began selling the dog toy at issue here: "Bad Spaniels." Ex. 1, at 4.



As these images make clear, Bad Spaniels appropriates Jack Daniel's trade dress in virtually every respect, while adding dog-poop humor. It replaces "Jack Daniel's" with "Bad Spaniels," along with a dog's image. It replaces "Old No. 7 Tennessee Sour Mash Whiskey" with "Old No. 2 on your Tennessee Carpet." And it replaces "40% ALC BY VOL (80 PROOF)" with "43% POO BY VOL" and "100% SMELLY." The remaining features—the square-shaped bottle, ribbed neck, arched lettering, filigreed border, color scheme, font styles, and size—are nearly identical. A label on the back states in tiny font: "This product is not affiliated with Jack Daniel Distillery." *Id*. at 3.

VIP's "intent behind designing the 'Bad Spaniels' toy was to match the bottle design for Jack Daniel's Tennessee Sour Mash Whiskey." *Id*. VIP's

5

president coined the name "Bad Spaniels" and asked the company's designer to work on a design. *Id.* The designer then looked at an actual Jack Daniel's bottle when sketching the toy. *Id.* at 3-4.

3. Jack Daniel's promptly asked VIP to stop selling Bad Spaniels. Ex. 2, at 2 (ECF 171). In response, VIP sued Jack Daniel's in the United States District Court for the District of Arizona, seeking a declaration that Bad Spaniels did not infringe or dilute any trademark rights and that Jack Daniel's trade dress and bottle design were not protected. *Id.* at 2-3. Jack Daniel's counterclaimed for infringement and dilution by tarnishment of its trademarks and trade dress. *Id.* at 3.

On summary judgment, the district court ruled that Jack Daniel's established the protectability of its trademarks and trade dress. *Id.* at 30-31. The court also ruled that Jack Daniel's raised triable issues regarding whether VIP's use of Jack Daniel's trademarks and trade dress created likely confusion. *Id.* at 19-20.

The court also rejected VIP's defense that its dog toy merited heightened First Amendment protection under the Second Circuit's framework in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). In *Rogers*, the actress Ginger Rogers claimed that a movie entitled "Ginger and Fred"

6

violated the Lanham Act by creating the false impression that she had sponsored it. 875 F.2d at 996-97. Reasoning that "the expressive element of titles requires more protection than the labeling of ordinary commercial products," the Second Circuit construed the Lanham Act to avoid "intrud[ing] on First Amendment values" applicable to titles. *Id.* at 998. It held that infringement would not lie unless "the title has no artistic relevance to the underlying work whatsoever" or "explicitly misleads as to the source or the content of the work." *Id.* at 999.

The district court here understood *Rogers* as limited to the use of trademarks in the titles or content of expressive works, such as movies, books, and songs. Ex. 2, at 9-10. VIP, however, used Jack Daniel's trademarks and trade dress to promote an ordinary "commercial product." *Id.* at 10. Accordingly, the court held that the Lanham Act's "standard" likelihood-of-confusion analysis applied. *Id.* at 9-10.

Regarding dilution, the court rejected VIP's defense that its dog toy was a non-actionable parody. *Id.* at 21. The court observed that the TDRA excludes parodies of famous marks from dilution liability, but only if a person uses a famous mark "other than as a designation of source for the person's own goods or services." 15 U.S.C. § 1125(c)(3)(A). Because VIP used Jack Daniel's

7

marks to designate the source of its dog toy, the court held the parody exclusion did not apply. Ex. 2, at 21. The court further held that Jack Daniel's raised triable issues concerning its dilution-by-tarnishment claims. *Id.* at 21-29.

Following a bench trial, the court ruled for Jack Daniel's on infringement and dilution. Ex. 1, at 5-24. Regarding infringement, it found that VIP's use of Jack Daniel's trademarks and trade dress was likely to confuse. *Id.* at 13-23. In so finding, it credited Jack Daniel's evidence that 29% of potential purchasers mistakenly believed Bad Spaniels was associated with Jack Daniel's. *Id.* at 17.

The court also found that Jack Daniel's proved dilution by tarnishment. *Id.* at 5-13. Among other things, the court found that Bad Spaniels tarnished Jack Daniel's marks by associating them with dog poop and with toys that potentially appeal to children. *Id.* at 13. The court then entered a permanent injunction against VIP. Ex. 3, at 6 (ECF 262).

4. A panel of this Court affirmed in part, reversed in part, vacated in part, and remanded. Ex. 4, at 7-13 (ECF 287-1). The panel affirmed the district court's rulings that Jack Daniel's trade dress and bottle design are protectible. *Id.* at 7-8. And the panel did not disturb the district court's factual

8

finding that VIP's use of Jack Daniel's trademarks and trade dress created likely confusion. Nevertheless, the panel vacated the judgment on infringement, reasoning that Bad Spaniels merited heightened First Amendment protection. *Id.* at 8-12.

While acknowledging Bad Spaniels was "surely not the equivalent of the *Mona Lisa*," the panel held the dog toy was an "expressive work" because it communicated a "humorous message." *Id.* at 10 (citation omitted). On that basis, it held that *Rogers* applied. As interpreted by this Court, that framework requires a plaintiff to prove not only likely confusion, but also that the defendant's use of the plaintiff's mark either is "not artistically relevant" or "explicitly misleads" consumers. *Id.* at 9 (citation omitted). The panel then remanded for the district court to determine whether Jack Daniel's could prove "one of the two *Rogers* prongs." *Id.* at 11-12.

Regarding dilution, the panel reversed. *Id.* at 12. It did not question, or even address, the district court's holding that the parody exclusion in section 1125(c)(3)(A) did not apply. Instead, the panel invoked the separate exclusion in section 1125(c)(3)(C) for "noncommercial use of a mark." *Id.* It held that, even though VIP used Jack Daniel's marks "to sell Bad Spaniels," VIP's use was "noncommercial" because it conveyed a "humorous message." *Id.* The

9

panel thus concluded that VIP was entitled to judgment on dilution. *Id.* Thereafter, this Court denied panel rehearing and rehearing en banc at that interlocutory phase of the case.

5.   Jack Daniel's filed a petition for a writ of certiorari before the Supreme Court.   Campari America LLC; Constellation Brands, Inc.; Campbell Soup Company; the Intellectual Property Law Association of Chicago; the International Trademark Association; and various alcohol beverage industry associations filed six amicus briefs supporting Jack Daniel's petition.[1]  VIP, supported by three law professor amici, opposed the petition. The Supreme Court denied review at that interlocutory phase.

6.   On remand, the district court granted VIP's motion for summary judgment that Jack Daniel's could not satisfy the *Rogers* test.  Ex. 5, at 5-11. As to the first *Rogers* prong, the court observed that "only the use of a trademark with *no* artistic relevance to the underlying work *whatsoever* does not merit First Amendment Protection."  *Id.* at 6 (quotation omitted).

---

[1]   The    Petition    and    briefs    are    available    at: https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/20-365.html.

Applying that test, the court found that VIP's use of Jack Daniel's trade dress was relevant to VIP's "joke about a dog defecating on the carpet." *Id.*

Regarding the second prong, the court explained that the "use [must] be *explicitly* misleading." *Id.* at 8 (quotation omitted). Applying that "high bar," the court found Bad Spaniels was not explicitly misleading because it altered Jack Daniel's trade dress, described itself as a "Silly Squeaker," and had a "miniscule disclaimer" on the back. *Id.* at 8-10.

Having found that Jack Daniel's could not satisfy *Rogers*, the district court concluded Bad Spaniels was "entitled to First Amendment protection." *Id.* at 11. The court, however, lamented that "it appears nearly impossible for any trademark holder to prevail under the *Rogers* test." *Id.* "Where relevance need be merely 'above zero,'" the court explained, "it is difficult to imagine what creative junior use would not pass the *Rogers* test." *Id.* "Similarly," the court continued, "the 'explicitly misleading' standard essentially displaces the likelihood-of-confusion test with a standard that excuses nearly any use less than slapping another's trademark on your own work and calling it your own." *Id.* Thus, the court concluded, Jack Daniel's and similar trademark owners have "no means to protect the viability" of their marks in the Ninth Circuit and "must seek relief before the United States Supreme Court or the United

11

States Congress." *Id.* The court entered final judgment for VIP. Ex. 6 (ECF 308).

7. Jack Daniel's appealed and moved to summarily affirm the judgment. Jack Daniel's explained that, because the prior panel's decision controlled the issues in this appeal, the Court should summarily affirm, which would allow Jack Daniel's to seek en banc or Supreme Court review. The Court granted the motion. Ex. 7 (Dkt. 23). This petition follows.

## ARGUMENT

## I. The Panel's Decision Conflicts with Decisions of Other Circuits

The panel's decision conflicts with decisions of other circuits with respect to both infringement and dilution. Now that this case has reached final judgment, the Court should resolve these conflicts en banc.

### A. The Panel's Decision Regarding Infringement Creates a Circuit Conflict

The panel's decision creates a circuit conflict over whether, to establish infringement under the Lanham Act, a plaintiff must make a showing above and beyond likely confusion when a defendant uses a trademark to identify the source of a commercial product in a humorous way. Six other circuits hold that a plaintiff need only satisfy the traditional likelihood-of-confusion test, under which humor or parody is merely one factor. In contrast, the panel here

applied a heightened First Amendment inquiry traditionally reserved for expressive works. Specifically, the panel held a plaintiff must prove not only likely confusion, but also that the defendant's use of the mark is "not artistically relevant" or "explicitly misleads consumers." Ex. 4, at 9. The Court should grant en banc review to correct that aberrant decision.

1. The Second, Fourth, Fifth, Seventh, Eighth, and Tenth Circuits, as well as the Trademark Trial and Appeal Board ("TTAB"), do not require a heightened showing in these circumstances. Instead, they apply a likelihood-of-confusion analysis in which humor is merely one factor.

The Seventh Circuit, for example, has acknowledged that the First Amendment generally protects "ridicule in the form of parody." *Nike, Inc. v. "Just Did It" Enters.*, 6 F.3d 1225, 1227 (7th Cir. 1993). However, when a defendant uses a trademark on a commercial product, the "ultimate question" is "whether [the defendant's] goods confuse customers"; "[p]arodies do not enjoy a dispensation from this standard." *Id.* at 1228. Instead, parody is merely "an additional factor in the analysis." *Id.*

Similarly, in a case involving a purported parody, the Eighth Circuit held the First Amendment is not a "license to infringe the rights of" a trademark owner. *Mut. of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 401-02 (8th Cir. 1987).

13

While the First Amendment would protect "an editorial parody in a book, magazine, or film," it does not protect "commercial use of [an owner's] marks in a way that causes consumer confusion." *Id.* at 402-03 & n.9.

The Fifth and Tenth Circuits similarly hold that whether a commercial product uses a mark in a humorous way is merely one factor in the likelihood-of-confusion analysis. *See, e.g.*, *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 194, 198 (5th Cir. 1998); *Jordache Enters. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1485-88 (10th Cir. 1987).

Contrary to the panel's view, *see* Ex. 4 at 11, the Fourth Circuit's opinion in *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252 (4th Cir. 2007), accords with this approach. "The finding of a successful parody," the Fourth Circuit explained, "only influences the way in which the [likelihood-of-confusion] factors are applied." *Id.* at 261. The Fourth Circuit thus applies a traditional likelihood-of-confusion test, not a heightened inquiry.[2]

---

[2] While acknowledging "[t]he Fourth Circuit decision was based on likelihood of confusion, not the First Amendment," the panel noted that the Fourth Circuit later adopted the "*Rogers* test" in *Radiance Found., Inc. v. NAACP*, 786 F.3d 316 (4th Cir. 2015). *See* Ex. 4 at 11 n.1. But that case involved use of a trademark in an article raising social and political issues; it did not concern use of a trademark to identify the source of a commercial product in a humorous way. 786 F.3d at 327.

14

Even the Second Circuit, which decided *Rogers*, has rejected the notion that humor triggers a heightened standard. Distinguishing *Rogers*, the Second Circuit explained that, although it has "accorded considerable leeway to parodists whose expressive works aim their parodic commentary at a trademark," it has "not hesitated to prevent a manufacturer from using an alleged parody of a competitor's mark to sell a competing product." *Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 812 (2d Cir. 1999).

Finally, when deciding the registrability of marks, the TTAB similarly holds that "[p]arody is not a defense," but rather a factor in the likelihood-of-confusion analysis. *Bos. Red Sox Baseball Club Ltd. P'ship v. Sherman*, 88 U.S.P.Q.2d 1581, 1592 (T.T.A.B. 2008); *accord Cards Against Humanity, LLC v. Vampire Squid Cards, LLC*, Opp'n No. 91225576, 2019 WL 1491525, at *11 (T.T.A.B. Feb. 28, 2019).

2. In contrast, the panel here extended *Rogers*' heightened standard beyond using a trademark in the title or content of an expressive work to using a trademark to identify the source of a commercial product in a humorous way. Ex. 4, at 11-12. That decision conflicts with those of other circuits, including the Second Circuit, which hold that the humorous use of mark on a commercial product is merely one factor in the likelihood-of-confusion analysis.

15

### B.    The Panel's Decision Regarding Dilution Creates a Circuit Conflict

1. The panel's dilution ruling also conflicts with other circuits' decisions. Here, the district court held that VIP did not qualify for the TDRA's parody exclusion because it used Jack Daniel's marks "as a designation of source" for its own product. Ex. 2, at 21. On appeal, the panel did not question that holding. Instead, it held that VIP's purported parody qualified for the separate exclusion for "noncommercial" uses. Ex. 4, at 12.

That decision conflicts with decisions from the Second and Fourth Circuits, as well as the TTAB. *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 112 (2d Cir. 2009); *Louis Vuitton*, 507 F.3d at 266; *N.Y. Yankees P'ship v. IET Prods. & Servs., Inc.*, 114 U.S.P.Q.2d 1497, 1508-09 (T.T.A.B. 2015). Those decisions recognize that, in cases involving purported parodies, the TDRA's parody exclusion governs whether the defendant is exempt from dilution liability. *See Starbucks Corp.*, 588 F.2d at 112. And those decisions hold that the parody exclusion does not apply where a defendant uses a mark as a "designation of source" for its own goods. *Louis Vuitton*, 507 F.3d at 266.

Here, in contrast, the panel held that a purported parody—one that did *not* qualify for the parody exclusion—nonetheless qualified for the

noncommercial exclusion. That holding circumvents the limits on the parody exclusion, which the Second and Fourth Circuits and the TTAB apply.

2. In addition to ignoring the parody exclusion, the panel's reading of the noncommercial exclusion creates an additional conflict. The panel reasoned that, although VIP used Jack Daniel's marks to "sell Bad Spaniels" (*i.e.,* for a commercial purpose), VIP's use was "noncommercial" because it conveyed a "humorous message." Ex. 4, at 12. Under that view, virtually any "humorous" use of a mark to sell a product would be immune from dilution liability.

No other circuit has adopted such a broad reading of the noncommercial exclusion. For example, the Fourth Circuit applies a multi-factor test to determine whether a use is noncommercial, considering questions including "whether the speaker has an economic motivation for the speech." *Radiance Found.*, 786 F.3d at 331-32. Under that test, no single factor is dispositive. *See id.* Under the panel's test, however, humor alone triggers the noncommercial exclusion. That interpretation would render the TDRA a dead letter in any case where a defendant uses humor to tarnish a mark.

17

## II. The Questions Presented Are Exceptionally Important and Squarely Presented

1.  As the volume of amicus briefs filed in the Supreme Court reflects, this case presents questions of exceptional importance. Unless corrected, the panel's decision will subvert the Lanham Act's goals of protecting trademark owners' investments in goodwill and preventing consumer confusion. *See U.S. Pat. & Trademark Off. v. Booking.com B.V.*, 140 S. Ct. 2298, 2302 (2020). Here, the district court found that VIP's use of Jack Daniel's marks was likely to confuse consumers. Yet, the panel imposed a heightened First Amendment test, which elevates VIP's interest in making funny dog toys over the Act's goal of protecting consumers from confusion.

That holding was unnecessary because the Act already protects any valid First Amendment interest in making humorous use of another's marks. As noted, the use of humor or parody is a factor in the likelihood-of-confusion analysis. If (unlike here) "the defendant employs a successful parody, the customer would not be confused, but amused," and the defendant would not be liable. *Nike*, 6 F.3d at 1228. There was therefore no need for the panel to engraft onto the Act a heightened test, which will only undermine the Act's goal of protecting consumers.

18

The panel's decision also undercuts trademark holders' investments in the goodwill associated with their marks. As the district court lamented, it is "nearly impossible for any trademark holder to prevail under the *Rogers* test." Ex. 5, at 11. The panel's decision thus leaves trademark owners with no way to protect their marks any time an infringer makes humorous use of a mark to sell a commercial product. That result will undermine Jack Daniel's and other trademark holders' own First Amendment rights to engage in trademark speech free from infringement. *See Matal v. Tam*, 137 S. Ct. 1744, 1760 (2017) (trademarks are private speech).

2. The panel's ruling on dilution also is exceptionally important, as it eviscerates the limits Congress placed on the parody exclusion. As noted, the panel did not question the district court's holding that VIP was ineligible for the parody exclusion because it used Jack Daniel's marks to designate the source of its dog toy. Instead, the panel held that VIP's purported parody qualified for the separate "noncommercial" exclusion merely because it conveyed a "humorous message." Ex. 4, at 12.

That reading contravenes the "well-established canon of statutory interpretation" that the "specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (cleaned up). In

19

the TDRA, Congress created a specific exclusion for "parodying" famous marks. 15 U.S.C. § 1125(c)(3)(A). In contrast, the noncommercial exclusion (which predates the TDRA) says nothing about parodies. *Id.* § 1125(c)(3)(C). The parody exclusion therefore governs whether VIP's purported parody is exempt from dilution liability.

By instead applying the noncommercial exclusion, the panel rendered the parody exclusion superfluous. *See RadLAX*, 566 U.S. at 645.[3] The panel also nullified Congress's decision to limit the parody exclusion to cases where a party uses a famous mark "other than as a designation of source" for its own product. 15 U.S.C. § 1125(c)(3)(A). Under the panel's decision, a defendant can circumvent that restriction merely by arguing that its purported parody is "humorous" and thus falls within the separate noncommercial exclusion.

3. Finally, this case is an excellent vehicle for en banc review of the questions presented. Although this Court previously denied rehearing en banc at an interlocutory phase of this case, the Court "retains authority to

---

[3] The panel primarily relied on *Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894, 907 (9th Cir. 2002), which held that a parodic song fell within the noncommercial exclusion. But that decision is inapt, as it predates Congress' enactment of a specific parody exclusion in the TDRA. *See Starbucks*, 588 F.3d at 111-12.

rehear the matter en banc" now that it has reached final judgment. *Cottier v. City of Martin*, 604 F.3d 553, 557 (8th Cir. 2010); *accord Jeffries v. Wood*, 114 F.3d 1484, 1488 (9th Cir. 1997) (en banc) (granting rehearing en banc following prior denial). Also, the questions presented are dispositive. But for the panel's erroneous rulings on the applicability of the *Rogers* test and the noncommercial exclusion, Jack Daniel's prevailed in proving infringement and dilution. *See* Ex. 1, at 5-23. The fact that the panel's rulings altered the outcome only underscores the need for en banc review.

## CONCLUSION

For the foregoing reasons, the Court should grant rehearing en banc.

Respectfully submitted,

Dated: April 15, 2022

By: /s/ Lisa S. Blatt

THEODORE H. DAVIS JR.
KILPATRICK TOWNSEND & STOCKTON
LLP
   1100 Peachtree Street NE
   Suite 2800
   Atlanta, GA 30309

DENNIS L. WILSON
KILPATRICK TOWNSEND & STOCKTON
LLP
   1801 Century Park East
   Suite 2300
   Los Angeles, CA 90067

LISA S. BLATT
   Counsel of Record
AMY MASON SAHARIA
MATTHEW B. NICHOLSON
NATALIE A. KOMROVSKY[*]
WILLIAMS & CONNOLLY LLP
   725 Twelfth Street, N.W.
   Washington, DC 20005
   (202) 434-5000
   (202) 434-5029 (fax)
   lblatt@wc.com

ISAAC S. CRUM
MESSNER REEVES LLP
   7250 N. 16th Street
   Suite 410
   Phoenix, AZ 85020

*Counsel for Appellant Jack Daniel's
Properties, Inc.*

---

[*] Admitted in Tennessee.  Practice supervised by D.C. Bar members pursuant to the D.C. Court of Appeals Rule 49(c)(8).

22

## CERTIFICATE OF COMPLIANCE

I am an attorney for Appellant Jack Daniel's Properties, Inc., and a member of the bar of this Court. I certify that, pursuant to Ninth Circuit Rule 35-4, the attached petition for rehearing en banc was prepared in a format, typeface, and type style that comply with Federal Rule of Appellate Procedure 32(a)(4)-(6) and contains 4,154 words.

*/s/ Lisa S. Blatt*
LISA S. BLATT

DATED: APRIL 15, 2022

23

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2022, I electronically filed the foregoing petition for rehearing en banc and attached exhibits with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ Lisa S. Blatt

LISA S. BLATT

DATED: APRIL 15, 2022